# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| PATRICIA O'DONNELL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 14 C 6839 |
| v. ) | |
| ) | Judge Jorge L. Alonso |
| CAINE WEINER COMPANY, LLC, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Patricia O'Donnell, sues defendant, Caine Weiner Company, LLC, for retaliation and sex discrimination under Title VII, 42 U.S.C. §§ 2000e *et seq.*, and the Equal Pay Act, 29 U.S.C. 206(d). This case is before the Court on defendant's motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. For the following reasons, the Court denies the motion.

## BACKGROUND

The Court will briefly summarize the facts, viewed in the light most favorable to plaintiff, the non-moving party, to provide the relevant background for the present motion.

Defendant, a collections agency, hired plaintiff as a legal forwarder at its Schaumburg office in September 2009. (Pl.'s LR 56.1(b)(3)(B) Resp., ECF No. 46, ¶ 20.) After about two years, defendant formed a Client Relations Team to provide clients with one point of contact for various types of inquiries, and plaintiff joined the team as a Client Relations Manager. (Def.'s LR 56.1(a)(3) Stmt., Ex. A, O'Donnell Dep., ECF No. 34-1, at 19-21.)

Plaintiff received her first performance review and raise recommendation in September 2013, four years after she had started working for defendant. (Pl.'s LR 56.1(b)(3)(C) Stmt., ECF

No. 47, ¶ 8.) Her recommended raise from $15.385 per hour to $16.93 per hour was never officially approved and implemented. (*Id.*) After speaking to the CEO of the company in January 2014, plaintiff received a lesser raise of $1.22 per hour to $16.61. (*Id.*)

At that time, Brian Patterson led the Client Relations Team as Client Relations Director and served as plaintiff's direct supervisor. (Pl.'s LR 56.1(b)(3)(B) Resp., ECF No. 46, ¶ 15.) Patterson and plaintiff were initially peers and, even after he became her supervisor, they remained on friendly terms and supported each other. (Def.'s LR 56.1(a)(3) Stmt., Ex. E, Patterson Dep., ECF No. 34-5, at 6, 29.) Patterson told her on a number of occasions that she was "grossly underpaid." (*Id.*, Ex. E, at 16; *id.*, Ex. A, ECF No. 34-1, at 32-33, 75.)

In January 2014, plaintiff found copies of performance reviews of two other Client Relations Managers, Karl Anderson and John Czapor, in Patterson's desk drawer. (*Id.* ¶¶ 27-28; Pl.'s LR 56.1(b)(3)(C) Stmt., ECF No. 47, ¶¶ 29-30.) According to plaintiff, she formerly sat at Patterson's desk and had left some items in one of the drawers, both because she thought Patterson might need to refer to some of them and because she did not have sufficient storage space at her new work station, and she inadvertently discovered the reviews among her things.[1] (Pl.'s LR 56.1(b)(3)(C) Stmt., ECF No. 47, ¶¶ 30; Def.'s LR 56.1(a)(3) Stmt., Ex. A, O'Donnell Dep., ECF No. 34-1, at 26, 56, 63.)

Plaintiff believed the reviews demonstrated that she had essentially the same job duties as her colleagues Anderson and Czapor, and therefore she should make no less than they made. (O'Donnell Dep., ECF No. 34-1, at 59.) She sent an email to Chris Melisko, defendant's Human Resources Director, complaining of her pay and asking if the company was discriminating

---

[1] Defendant's position is that plaintiff did not have permission to go through Patterson's desk drawer, Patterson was unaware that plaintiff kept things in that desk even after she moved to a different workstation, and, according to Patterson, plaintiff herself admitted that taking and copying the reviews was "theft." (Def.'s LR 56.1(a)(3) Stmt., ECF No. 34, ¶¶ 27; *id.*, Ex. E, at 13-14; *id.*, Ex. F-2 at 2.)

against her. (Pl.'s LR 56.1(b)(3)(B) Resp., ECF No. 46, ¶ 31.) Plaintiff subsequently met with defendant's President, Greg Cohen, who gave plaintiff the aforementioned 8% raise to $16.61 per hour. (*Id.* ¶ 32.) However, based on information plaintiff had learned from Patterson, she still believed she was being paid approximately $15,000 per year less than the other Client Relations Managers for essentially the same work, and on June 4, 2014, she sent an email to Melisko to ask about this "$15K salary differential." (Pl.'s App., ECF No. 48, at 108; Def.'s LR 56.1(a)(3) Stmt., Ex. A, O'Donnell Dep., ECF No. 34-1, at 45.) On June 11, 2014, she sent another email to Melisko, attaching an EEOC Fact Sheet regarding the Equal Pay Act. (Pl.'s LR 56.1(b)(3)(B) Resp., ECF No. 46, ¶ 34.)

On July 1, 2014, plaintiff sent an email from her personal email account to her work email account with the subject line, "Sex Discrimination." (*Id.* ¶ 35.) The email was intended to serve as a sort of memorandum, which she had prepared in anticipation of a meeting with Melisko. (Def.'s LR 56.1(a)(3) Stmt., Ex. A, O'Donnell Dep., ECF No. 34-1, at 51-52.) Patterson discovered the email on plaintiff's computer and noticed that it contained confidential employee data about John Czapor, which plaintiff should not have had. (*Id.*, Ex. E, at 26; Pl.'s LR 56.1(b)(3)(B) Resp., ECF No. 46, ¶ 36.)

On July 10, 2014, plaintiff met with Joe Batie, defendant's Chief Commercial Officer and an executive responsible for overseeing the Client Relations Team, to discuss her concerns about her pay; Frank Dispensa, a Vice President of Regional Operations who was one of the individuals in charge of the Schaumburg office, sat in to observe. (Pl.'s LR 56.1(b)(3)(B) Resp., ECF No. 46, ¶¶ 8-11; Pl.'s LR 56.1(b)(3)(C) Stmt., ECF No. 47, ¶ 18.) Plaintiff explained to Batie that she believed she was being paid less than her colleagues for the same work, but Batie told her that he believed she was being treated fairly. (Def.'s LR 56.1(a)(3) Stmt., Ex. A,

O'Donnell Dep., ECF No. 34-1, at 67-69.) Plaintiff mentioned that she had an appointment to file a charge of discrimination with the EEOC, and Batie did not try to discourage her, telling her, "do what you have to do." (*Id.*, Ex. A, at 68-69.)

On July 15, 2014, plaintiff met with Brian Patterson to try to ascertain defendant's official response to her allegations so she could pass it along to the EEOC. (Def.'s LR 56.1(a)(3) Stmt., Ex. F-2, ECF No. 34-6; *id.*, Ex. A, ECF No. 34-1, at 72.) During the course of this meeting, Patterson noticed that plaintiff had written specific hiring dates for Patterson, Anderson, and Czapor on one of her papers. (*Id.*, Ex. A, at 73.) Patterson asked her how she knew those specific dates, and plaintiff initially responded, "I just do." (*Id.*, Ex. A, at 74.)

Shortly after the meeting concluded, plaintiff told Patterson she wanted to meet with him again. (*Id.*) At this second meeting, she told him that she had found the performance reviews in Patterson's desk drawer and made copies to give to the EEOC. (*Id.*, Ex. A, at 76-77.)

The next day, July 16, 2014, plaintiff was suspended with pay, pending investigation. (*Id.*, Ex. A, at 96.) On July 21, 2014, Frank Dispensa called to inform her that her employment was terminated. (*Id.*, Ex. A, at 97-98.) According to defendant, plaintiff was terminated for searching through her supervisor's desk and copying documents of other employees. (*Id.*, Ex. B, Frank Dispensa, ECF 34-2, at 28; *id.*, Ex. K, Termination Request Form, ECF 34-11.) This lawsuit ensued.

## **DISCUSSION**

To prevail on a summary judgment motion, "the movant [must] show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). At this stage, the court may not weigh evidence or determine the truth of the matters asserted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). We

view all evidence and draw all inferences in favor of the non-moving party. *Michas v. Health Cost Controls of Ill., Inc.*, 209 F.3d 687, 692 (7th Cir. 2000).

In the present motion, defendant claims that (1) plaintiff cannot prevail on her retaliation claims because there is no triable issue of fact as to whether there was a legitimate non-discriminatory reason—plaintiff's searching through Patterson's desk—for plaintiff's discharge, and (2) plaintiff cannot prevail on her discrimination claims because there is no triable issue of fact as to whether her alleged comparators had different job duties and responsibilities.

## I. RETALIATION

Title VII makes it unlawful for an employer "to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Title VII also makes it unlawful for an employer to "discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter." 42 U.S.C. § 2000e-3(a). This type of discrimination is commonly known as "retaliation." *Tomanovich v. City of Indianapolis*, 457 F.3d 656, 662 (7th Cir. 2006).

The Equal Pay Act provides in relevant part that "[n]o employer . . . shall discriminate . . . between employees on the basis of sex by paying wages to employees . . . at a rate less than the rate at which he pays wages to employees of the opposite sex . . . for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions . . . ." 29 U.S.C. § 206(d)(1). The Fair Labor Standards Act, of which the Equal Pay Act is a part, generally "prohibits 'any person' from discharging or discriminating against an employee because the employee 'has filed any complaint or instituted

or caused to be instituted any proceeding under or related to this chapter.'" *Ahuluwalia v. Hamilton Crossing Animal Hosp., P.C.*, No. 1:09-CV-01426-TWP, 2011 WL 1838672, at *2 (S.D. Ind. May 13, 2011) (quoting 29 U.S.C. § 215(a)(3) (emphasis omitted)). Although the Equal Pay Act and Title VII provide distinct remedies, they are nevertheless interpreted "in harmony" to the extent possible, *Patkus v. Sangamon-Cass Consortium*, 769 F.2d 1251, 1260 n.5 (7th Cir. 1985), and the analysis the Court must perform in determining whether there is evidence of a triable retaliation claim is the same under either statute. *See Tyler v. Trs. of Purdue Univ.*, 834 F. Supp. 2d 830, 843 (N.D. Ind. 2011).

A plaintiff may prove retaliation by using either the direct method of proof or the indirect method, which the Seventh Circuit has explained as follows:

> Under the direct method, [the plaintiff] must demonstrate that (1) he engaged in a statutorily protected activity; (2) he suffered a materially adverse action by his employer; and (3) a causal connection exists between the two. Under the indirect method, the first two elements remain the same, but instead of proving a direct causal link, the plaintiff must show that he was performing his job satisfactorily and that he was treated less favorably than a similarly situated employee who did not complain of discrimination. Once a plaintiff establishes the *prima facie* case under the indirect method, the defendant must articulate a nondiscriminatory reason for its action; if he does, the burden remains with the plaintiff to demonstrate that the defendant's reason is pretextual.

*Stephens v. Erickson*, 569 F.3d 779, 786-87 (7th Cir. 2009) (internal citations omitted).

Under the direct method, the plaintiff can prove causation via direct evidence (akin to an admission) or "by presenting a 'convincing mosaic of circumstantial evidence' that would permit the same inference without the employer's admission." *Coleman v. Donahoe*, 667 F.3d 835, 860 (7th Cir. 2012) (quoting *Rhodes v. Ill. Dep't of Transp.*, 359 F.3d 498, 504 (7th Cir. 2004)). The Seventh Circuit has recognized three categories of circumstantial evidence available to a plaintiff using the "convincing mosaic" approach. The first is "suspicious timing, ambiguous statements oral or written, . . . and other bits and pieces from which an inference of [retaliatory]

intent might be drawn." *Coleman*, 667 F.3d at 860 (citing *Silverman v. Bd. of Educ. of City of Chi.*, 637 F.3d 729, 734 (7th Cir. 2011)). The second is "evidence, but not necessarily rigorous statistical evidence, that similarly situated employees were treated differently." *Volovsek v. Wis. Dep't of Agric., Trade & Consumer Prot.*, 344 F.3d 680, 689 (7th Cir. 2003). The third is "evidence that the employer offered a pretextual reason for an adverse employment action." *Diaz v. Kraft Foods Global, Inc.*, 653 F.3d 582, 586-87 (7th Cir. 2011).

Defendant contends that plaintiff cannot meet her burden under either the direct or indirect method of proof for a variety of reasons. First and foremost, defendant argues that its proffered reason for terminating plaintiff—her searching through Brian Patterson's desk and copying confidential documents—was not a pretext but a legitimate, non-discriminatory reason for termination. It is undisputed that plaintiff took confidential documents from Patterson's desk drawer and copied them without his knowledge, which Patterson called a "betray[al]" and Dispensa said was "not an acceptable thing to do" (Def.'s LR 56.1(a)(3) Stmt., ECF No. 34, ¶¶ 55, 57), and defendant argues that this misconduct was plainly sufficient cause for termination, regardless of the context.

Additionally, defendant argues that there is no "suspicious timing" in this case because plaintiff first began to complain about wage discrimination in January 2014, approximately six months before she was fired, and she renewed her complaints in June 2014, a month before she was fired, but plaintiff was terminated only after Patterson learned that plaintiff had gone through his desk. According to defendant, if the wage discrimination complaints were the true cause of her termination, she would have been fired weeks or months earlier. Further, defendant maintains, as it did prior to terminating plaintiff, that the evidence does not show that any similarly-situated employees were treated differently; even if Czapor and Anderson were treated

7

differently, they were not similarly situated because they had different and additional job duties that plaintiff did not have.

In response, plaintiff admits finding confidential employee information in Patterson's desk, but she rejects defendant's version of the circumstances under which she found it. Plaintiff claims that Patterson knew she went in and out of that drawer from time to time and never raised any objection to her doing so; in fact, she would sometimes go into that drawer while Patterson was sitting at his desk. (*Id.*, Ex. A, ECF No. 34-1, at 86-89.) According to plaintiff, she *inadvertently* found confidential documents in Patterson's drawer, to which she had access with Patterson's knowledge and consent, while she was searching through the drawer for reasons unrelated to her wage dispute. Assuming that plaintiff's version of the facts is the correct one, as we must on defendant's motion for summary judgment, it is far from clear that plaintiff committed any unacceptable betrayal, to paraphrase Dispensa and Patterson, that would reasonably warrant termination. A jury could find that an employee's inadvertently finding confidential documents among her own things is such a flimsy reason for terminating her that it cannot be credited, and that it was a pretext for retaliation for protected activity.

Whether the timing of the termination was "suspicious" depends on the true reason for the firing, which, as explained above, is reasonably in dispute. Further, as the Court will explain more fully below, whether plaintiff was "similarly situated" to Czapor and Anderson is also in dispute. Because there are numerous disputed issues of material fact, defendant's motion for summary judgment on plaintiff's retaliation claims must be denied.

## II. DISCRIMINATION

Plaintiff claims, under both Title VII and the Equal Pay Act, that defendant discriminated against her on the basis of sex by paying her less than Czapor and Anderson for the same or

similar work. Defendant argues that there is no triable issue of fact as to plaintiff's wage discrimination claim because, as defendant has consistently maintained, Czapor and Anderson had different and additional job duties, and plaintiff cannot adduce any evidence demonstrating that she, Czapor, and Anderson performed the same or similar work under similar conditions.

   A.  **Equal Pay Act**

Under the Equal Pay Act, plaintiff must prove that "(1) higher wages were paid to a male employee, (2) for equal work requiring substantially similar skill, effort and responsibilities, and (3) the work was performed under similar working conditions." *Jaburek v. Foxx*, No. 15-2165, 2016 WL 143459, at *5 (7th Cir. Jan. 13, 2016) (citing *Warren v. Solo Cup Co.*, 516 F.3d 627, 629 (7th Cir. 2008)). "In determining whether two jobs are equal, the crucial inquiry is 'whether the jobs to be compared have a common core of tasks, i.e., whether a significant portion of the two jobs is identical," and if so, whether "any additional tasks make the jobs 'substantially different.'" *Cullen v. Ind. Univ. Bd. of Trs.*, 338 F.3d 693, 698 (7th Cir. 2003) (quoting *Fallon v. Ill.*, 882 F.2d 1206, 1209 (7th Cir.1989)). Proof of discriminatory intent is not a requirement. *See Stopka v. Alliance of Am. Insurers,* 141 F.3d 681, 685 (7th Cir. 1998). If plaintiff can meet its burden of proof, the burden shifts to the defendant to prove one of four statutory defenses: "(i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex." 29 U.S.C. § 206(d); *see Warren*, 516 F.3d at 630. Education is a factor in determining the skill level required for the job as well as whether the fourth affirmative defense applies. *Cullen*, 338 F.3d at 699, 702.

Defendant contends that neither of the co-workers with whom plaintiff compares herself is fairly comparable. Anderson was paid commission because he held certain sales

responsibilities, which plaintiff did not. (Def.'s LR 56.1(a)(3) Stmt., ECF No. 34, ¶¶ 58-60.) Czapor worked in defendant's Louisville office and provided "backup operational support" to the office, filling in at times as the office's Collection Manager. (*Id.* ¶¶ 62-63.) True, Anderson and Czapor held the same basic job as plaintiff as Client Relations Managers, but both hold college degrees, which plaintiff does not, and they both performed sales duties and face-to-face client interaction duties, which plaintiff never did. (*Id.* ¶¶ 58-59, 61-62, 64-66.)

Plaintiff responds that she, too, assumed additional duties beyond the scope of her Client Relation Manager position, especially when the company was short-handed, and she therefore was no different from Anderson and Czapor in that respect. (*Id.*, Ex. A, at 26-28, 69-70.) But plaintiff does not adduce evidence that she performed the same duties. She contends that she performed "sales duties," but the duties she describes are confined to receiving calls from existing clients whose sales contacts were no longer employed by defendant and answering their questions as best she could until the clients were assigned a new sales contact. (*Id.*, Ex. A, at 26-27.) This is nothing like Anderson's regular client contact, which included daily updates, monthly reporting, and face-to-face interaction, among other differences. (Def.'s LR 56.1(a)(3) Stmt., Ex. L, ECF No. 34-12, Answers to Interrogs., No. 7, at 5.) Similarly, Czapor was responsible for regular contact with clients, including daily updates and monthly reporting, and he had additional "collection/operation management job duties." (*Id.*) Plaintiff has not pointed to evidence that she had sales duties along those lines, nor did she have any operations management job duties.

However, Patterson stated at his deposition that "a large percentage" of what Czapor and plaintiff did was "the very same job." (Def.'s LR 56.1(a)(3) Stmt., Ex. E, ECF No. 34-5, at 18.) Batie stated at his deposition that "on a standard business day Czapor's job was 10-15% different

10

than O'Donnell's job." (*Id.*, Ex. D, ECF No. 34-4, at 58.) True, Batie also stated that the difference would be much greater when Czapor was filling in for another employee who was sick or on vacation, but plaintiff testified that she too absorbed other employees' job duties as necessary, to the point that she had "two full-time jobs many times." (*Id.*, Ex. A, ECF No. 34-1, at 69-70.)

On the present record, the Court cannot determine whether (a) plaintiff, Anderson, and Czapor all had a "common core" of identical tasks, and the additional duties of Anderson and Czapor were a minor aspect of their jobs, or (b) Czapor and Anderson's additional duties make their jobs "substantially different" from plaintiff's. *See Cullen*, 338 F.3d at 698. The parties simply have not described the similarities and differences in the respective job duties of the three Client Relations Managers—plaintiff, Anderson, and Czapor—in enough detail to allow this Court to conclude, viewing the facts in the light most favorable to plaintiff, that these three employees performed substantially different jobs.

Defendant's motion for summary judgment is denied as to plaintiff's Equal Pay Act discrimination claim.

### B. Title VII Discrimination

Even if plaintiff is unable to meet the equal work standard of the Equal Pay Act, she may prevail on her Title VII wage discrimination claim, as Title VII is an "independent remedy, in that it may be pursued in conjunction with other remedies." *Schnellbaecher v. Baskin Clothing Co.*, 887 F.2d 124, 130 (7th Cir. 1989). As explained above in relation to plaintiff's retaliation claim, plaintiff "may prove her discrimination claim[] through direct evidence demonstrating discriminatory intent by setting forth either an outright admission by the decision-maker that the challenged action was undertaken because of [sex], or 'a convincing mosaic of circumstantial

evidence that points directly to a discriminatory reason for the employer's action.'" *Dove v. Depuy Orthopedics*, No. 1:03-CV-379 RM, 2005 WL 1683980, at *3-5 (N.D. Ind. July 18, 2005) (quoting *Sartor v. Spherion Corp.,* 388 F.3d 275, 278 (7th Cir. 2004)). A "convincing mosaic of circumstantial evidence" may include evidence of suspicious timing, similarly-situated males who were treated differently, or pretext. *See Coleman*, 667 F.3d at 860.

Alternatively, plaintiff may proceed by the indirect method of proof under the burden-shifting analysis set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802 (1973), which requires her to prove that "(1) she was a member of a protected class, (2) she was meeting her employer's legitimate expectations, (3) she suffered an adverse employment action, and (4) the employer treated a similarly situated man more favorably." *Cullen,* 338 F.3d at 704. If she establishes a *prima facie* case by proving those four elements, the burden shifts to defendant to articulate a legitimate, non-discriminatory reason for its action; if it does so, the burden shifts back to plaintiff to prove the defendant's justification for its action is a pretext. "Unlike a claim under the Equal Pay Act, a Title VII wage discrimination claim requires proof of 'an *intent* to discriminate, and the intent must encompass an actual desire to *pay* women less than men because they are women.'" *Dove*, 2005 WL 1683980, at *4 (quoting *Loyd v. Phillips Bros. Inc.,* 25 F.3d 518, 525 (7th Cir. 1994) (emphasis in original)).

Defendant's position is that Czapor and Anderson were not similarly situated to plaintiff because of their additional job duties, but, as explained above, plaintiff has raised genuine factual issues as to whether plaintiff performed essentially the same job as Anderson, Czapor or both of them. Relatedly, because there is evidence that plaintiff's job was the same as Anderson's or Czapor's in its essential aspects, there is a genuine issue of fact as to whether defendant's proffered justification for the pay difference (in this case, Czapor and Anderson's additional

duties) was a pretext. A reasonable jury, if persuaded by that evidence, could perhaps conclude that any additional duties Anderson and Czapor may have had were too small a part of their overall responsibilities to be the real reason they were paid so much more than plaintiff. These genuine issues of material fact preclude summary judgment for defendant on plaintiff's Title VII discrimination claim.

## **CONCLUSION**

For the reasons set forth above, defendant's motion for summary judgment is denied. A status hearing is set for March 9, 2016 at 9:30 a.m.

**SO ORDERED.**

ENTERED: February 22, 2016

_____
**HON. JORGE L. ALONSO**
**United States District Judge**